Priority Send ✓
Enter ✓
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN COLEMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security Administration,<br><br>    Defendant. | Case No. CV 03-6093-VAP (JTL)<br><br>ORDER ADOPTING FINDINGS,<br>CONCLUSIONS AND RECOMMENDATIONS<br>OF UNITED STATES MAGISTRATE JUDGE<br><br>THIS CONSTITUTES NOTICE OF ENTRY<br>AS REQUIRED BY FRCP, RULE 77(d). |

    Pursuant to 28 U.S.C. § 636, the Court has reviewed the Complaint, all the records and files herein, and the Report and Recommendation of the United States Magistrate Judge. The Court concurs with and adopts the findings, conclusions and recommendations of the Magistrate Judge.

    IT IS ORDERED that plaintiff's Motion for Summary Judgment or Remand is granted; defendant's Cross-Motion for Summary Judgment is denied; and this matter be remanded for further administrative action consistent with the Report and Recommendation.

DATED: September 7, 2005

                                            VIRGINIA A. PHILLIPS
                                            UNITED STATES DISTRICT JUDGE

FILED
CLERK, U.S. DISTRICT COURT

JUL 29 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN COLEMAN,<br><br>        Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>        Defendant. | Case No. CV 03-6093-VAP (JTL)<br><br>REPORT AND RECOMMENDATION OF<br>UNITED STATES MAGISTRATE JUDGE |

The Court submits this Report and Recommendation to the Honorable Virginia A. Phillips, United States District Judge, pursuant to 28 U.S.C. Section 636 and General Order 194 of the United States District Court for the Central District of California.

### PROCEEDINGS

On August 26, 2003, Helen Coleman ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of her application for disability insurance benefits. On December 30, 2003, defendant filed an Answer to Complaint. On June 22, 2004, plaintiff filed a Motion for Summary Judgment. On July 26, 2004, defendant filed a Cross-

Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment. Plaintiff filed her Response to Defendant's Cross-Motion for Summary Judgment on August 31, 2004.

Now pending before the Court and ready for decision are (a) plaintiff's Motion for Summary Judgment or Remand and (b) defendant's Cross-Motion for Summary Judgment.

## BACKGROUND

On March 18, 1999, plaintiff protectively filed an application for disability insurance benefits. (Administrative Record ["AR"] at 120-22). Plaintiff alleged that, beginning on July 26, 1998, she was unable to work because she suffered from leg and knee pain. (AR 104, 109, 120). The Commissioner denied plaintiff's application for benefits both initially and upon review. (AR at 104-07, 109-12).

On August 17, 1999, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 113). On December 10, 1999, the ALJ conducted a hearing in Santa Barbara, California. (AR at 40-62). Plaintiff appeared at the hearing without counsel and testified. (AR at 43-57). A vocational expert, Abbe May, also testified. (AR at 57-59). On January 5, 2000, the ALJ issued his decision denying benefits. (AR 264-70). Thereafter, after review by the Appeals Council, the ALJ's decision was vacated. The case was then remanded for further proceedings. (AR 273-75). On February 11, 2003, a second hearing was held before the ALJ. (AR at 63-101). Plaintiff appeared without counsel and testified at the hearing. (AR at 66-83). A medical expert, Michael Gurvey, M.D., and the vocational expert, Abbe May, also testified. (AR at 84-101).

On March 28, 2003, the ALJ issued his decision denying benefits.

(AR at 32-39).  In his decision, the ALJ concluded that plaintiff had right knee pain and underwent two surgeries for a right knee meniscal tear.  (AR at 37-38).  According to the ALJ, however, the impairment, although severe, did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1.  (AR at 37-38).  The ALJ also found that plaintiff retained the residual functional capacity to perform at least a reduced range of light work, but was precluded from standing or walking longer than two hours in an 8-hour workday, and from frequent crawling, stooping, kneeling, or crouching.  (AR at 38).  Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act.  (AR at 39).

On April 4, 2003, plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision.  (AR at 17).  On June 19, 2003, the Appeals Council issued an unfavorable decision denying plaintiff's request for review.  (AR at 8-12).  It adopted the ALJ's statements of law, issues in the case, and evidentiary facts, and the ALJ's conclusion that plaintiff was not disabled.  But the Appeals Council disagreed with the basis of the ALJ's decision, and set forth new findings.  (AR at 10-12).  The Appeals Council found that although the ALJ found plaintiff was insured for a period of disability through the date of the ALJ's decision, March 28, 2003 (AR at 39), the record showed plaintiff was insured only through December 31, 2001.  (AR at 10-11).  Additionally, the Appeals Council found that plaintiff performed substantial gainful activity from approximately February 2001 through December 2001.  (AR at 10-11). The Appeals Council adopted the ALJ's rationale and finding that plaintiff was able to perform a reduced range of light work and, thus,

was not disabled for all periods through December 31, 2001 when plaintiff was not performing substantial gainful activity. (AR at 11).

### PLAINTIFF'S CONTENTIONS

In her Motion for Summary Judgment or Remand, plaintiff makes the following contentions:

1. Plaintiff was prejudiced by the absence of counsel.
2. The ALJ failed to obtain records containing relevant medical information.
3. The ALJ improperly relied on the grids.
4. The ALJ failed to fully develop the record.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is

///
///

1  susceptible of more than one rational interpretation, the ALJ's
2  decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th
3  Cir. 1984).

## DISCUSSION

A.  **Lack of Counsel**

In her motion for summary judgment, plaintiff argues that her lack of counsel at the hearing before the ALJ materially prejudiced her case because, inter alia, counsel (1) would likely have effectively cross-examined the vocational expert, and (2) would likely have addressed the fact that the record did not contain relevant medical evidence.[1] As discussed below, the Court agrees.

"Lack of counsel does not affect the validity of the hearing and hence warrant remand, unless the claimant can demonstrate prejudice or unfairness in the administrative proceedings." Vidal v. Harris, 637 F.2d 710, 713-14 (9th Cir. 1981). Thus, "the issue is not whether the right to representation was knowingly waived, rather, it is whether, in the absence of representation, the administrative law judge met the heavy burden imposed by [Cox v. Califano, 587 F.2d 988 (9th Cir. 1978)]." See id. In Cox, the Ninth Circuit held that where a claimant is not represented by counsel, "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and search for all the relevant facts." Cox, 587 F.2d at 991 (internal quotation and citation omitted); see also Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992). In such a situation, the ALJ "must be especially

---

[1] Plaintiff appeared without counsel at both the December 1999 and the February 2003 ALJ hearings. She is, however, represented by counsel in the instant action.

5

diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." See Cox, 587 F.2d at 991 (internal quotation omitted). When the ALJ fails to meet his or her heavier burden for a claimant without counsel, remand is appropriate. Vidal, 637 F.2d at 715.

In Cox, the Ninth Circuit remanded the action for further proceedings after concluding that the plaintiff had been prejudiced by his lack of representation during the hearing before the ALJ. See Cox, 587 F.2d at 991. There, the ALJ interpreted a letter written by the plaintiff's treating physician, which letter indicated that the plaintiff was unlikely to return to his past relevant work and advised the plaintiff to begin vocational rehabilitation, as a medical opinion that the plaintiff could in fact return to work. See id. at 990-91. Relying on a vocational expert's testimony that if the plaintiff was able to "engage in a sustained daily work routine," there existed certain jobs that the plaintiff could perform, the ALJ found the plaintiff was not disabled. See id. at 990. The Ninth Circuit held that the ALJ appeared to have misunderstood the treating physician's letter, and that "[h]ad plaintiff been represented by counsel at the administrative hearing, it is likely that the ALJ's misunderstanding of both the physician's letter and the testimony of the vocational expert would have been clarified." See id. at 991. The Ninth Circuit observed the ALJ "made no effort to, and gave plaintiff little opportunity to, elaborate further on [the] crucial question" of the meaning of the treating physician's letter. See id.

Similarly, in Vidal, the Ninth Circuit held that where an unrepresented plaintiff establishes prejudice from lack of representation, he is entitled to a remand for further proceedings.

See Vidal, 637 F.2d at 713-15. There, the ALJ found that the plaintiff had a learning disability and that he could not perform his past relevant work, but, in reliance on the testimony of a vocational expert, found that the plaintiff could perform certain other jobs. The Ninth Circuit held that the testimony of the vocational expert was insufficient to support the ALJ's finding because the vocational expert did not "provide convincing evidence that [the plaintiff] was qualified for the [other] positions." See id. at 713. In particular, the Ninth Circuit observed that the ALJ "did not adequately probe whether an individual with [the plaintiff's] learning disability would be considered eligible to apply for those jobs." See id. at 714. As a result, "[the plaintiff's] case was clearly prejudiced by the inadequate examination of the vocational expert" as it was clear from the record that the plaintiff "was totally incapable of challenging the vocational expert's conclusions." See id. The court concluded that "[h]ad the claimant been represented by counsel at the hearing, it is likely that cross-examination of the vocational expert would have revealed" relevant information as to whether plaintiff was in fact qualified to perform the other jobs. See id.

    Here, as in Cox and Vidal, the ALJ did not meet his duty to develop the record vigorously. First, with respect to the vocational expert testimony, the ALJ asked the vocational expert to consider a hypothetical person who is "limited to light exertional activity and is further restricted to no frequent climbing, stooping, kneeling or walking" and "to being on her feet, standing or walking, to two hours per day." (AR at 95). The vocational expert replied that such a person could not perform plaintiff's past relevant work, but could work as an assembler, an order clerk, or a general clerical assistant.

(AR at 95-96). The ALJ, however, never pressed the vocational expert to explain her conclusions in response to the hypothetical, the medical evidence, and plaintiff's testimony. (<u>See</u> AR at 93-96; <u>see also</u> AR at 57-59). Furthermore, in order for a vocational expert's testimony to constitute substantial evidence, the hypothetical question posed must "consider all of the claimant's limitations." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1044 (9th Cir. 1995). In this case, it is not clear that all plaintiff's ailments were carefully considered in the expert's answers. For example, the ALJ noted plaintiff suffered side effects from her various medications, including difficulty concentrating.[2] (<u>See</u> AR at 82-83). Plaintiff also told the ALJ that she had a problem with incontinency. (AR at 81). The ALJ, however, never asked the vocational expert to consider these limitations. (<u>See</u> AR at 93-96; <u>see also</u> AR at 57-59).

It is also apparent from the record that, as in <u>Vidal</u>, plaintiff herself was incapable of challenging the vocational expert's conclusions. <u>See Vidal</u>, 637 F.2d at 714. After hearing the medical expert testify regarding her functional capabilities and the vocational expert testify that she could perform work as an assembler, order clerk or general clerical assistant, plaintiff had difficulty

---

[2] Numerous cases have recognized that side-effects from prescribed medications conceivably could render a claimant disabled or at least contribute to a disability. <u>See</u>, e.g., <u>Figueroa v. Secretary of HEW</u>, 585 F.2d 551, 553-54 (1st Cir. 1978); <u>Cowart v. Schweiker</u>, 662 F.2d 731, 737 (11th Cir. 1981); <u>Floyd v. Schweiker</u>, 550 F. Supp. 863, 867-68 (N.D. Ill. 1982).

1  formulating meaningful questions for either expert.³ (See AR at 89-93,
2  95-101). If plaintiff had been represented by counsel, it is highly
3  likely that counsel would have performed a much more effective cross-
4  examination. See Vidal, 637 F.2d at 714 (pro se claimant prejudiced
5  because he was incapable of challenging ALJ's inadequate examination
6  of vocational expert); see also Brenem v. Harris, 621 F.2d 688, 690-91
7  (5th Cir. 1980)("[T]he very fact that the vocational expert was

---

³ At the December 1999 hearing, plaintiff did not ask the vocational expert a single question. (AR at 42-62). At the February 2003 hearing, after some difficulty, plaintiff managed to formulate two hypotheticals for the expert, specifically, to consider (1) a person who had to spend half the day in bed and was "lightheaded" with "memory problems" when not in bed; and (2) a person who had to keep her leg elevated at all times. (AR at 96-100). The vocational expert responded that, in both these situations, work would be precluded. (AR at 96-100). The ALJ then asked plaintiff:

> ALJ: Anything else? Shall we close at this time? I've got another Claimant coming in here in five minutes. Hearing nothing, I will –
> P:   I'm – can I have a few minutes to think?
> ALJ: Well, not a few minutes. You got to think right now and do it. [The expert] answered two questions for you saying that with those things she cannot find a job for you.
> P:   Can you help me with – is there another question you think I need to ask.
> VE:  I don't think you need to ask another question because I think you've eliminated work with the things that you've given me. So I've already said that I don't think you can work, so I think you're pretty much got your desired result.

(AR at 100). At that point, the ALJ ended the hearing. (AR at 100-01). It is apparent from the foregoing that the ALJ abdicated his responsibility to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts". See Cox, 587 F.2d at 991. The vocational expert's statement that plaintiff "need not ask another question" and "I think you're [sic] pretty much got your desired result" was misleading and most likely caused plaintiff to believe that her cross-examination was sufficient and that the expert had made a conclusive finding that she was unable to work.

insufficiently questioned in the interrogatories is ample evidence that [the claimant] may have been prejudiced by the lack of counsel."); Earp v. Commissioner of Social Security Admin., 168 F. Supp. 2d 628, 634 (E.D. Tex. 2001)(holding claimant prejudiced by lack of representation where counsel could have cross-examined vocational expert).

Second, with respect to plaintiff's allegation that the ALJ failed to obtain relevant medical evidence, it is unclear whether the ALJ had the full medical records before him. The Social Security Administration assigns an ALJ a duty to fully and fairly develop the record to assure that claimant's interests are considered. See DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). In carrying out this duty, the ALJ must "make every reasonable effort" to help the claimant gather his medical records. 20 C.F.R. § 416.912(d). As noted above, the ALJ's duty to develop the record is particularly heightened where, as here, a claimant is not represented. Cox, 587 F.2d at 991.

In his decision, the ALJ noted that the medical expert, Michael Gurvey, M.D., testified at the hearing that "there were no assessments that postdate October 1999." (AR at 37). The ALJ "interpret[ed] this lack of medical treatment to reflect the mild nature of [plaintiff's] right knee impairment." (AR at 37). A review of the February 2003 hearing transcript, however, shows that Dr. Gurvey never stated that such records did not exist or that plaintiff received no treatment after October 1999. (AR at 86-87). Rather, Dr. Gurvey only stated that he had not been provided with plaintiff's up-to-date medical records. (AR at 86-88).

///

In actuality, it appears that plaintiff did receive medical treatment after October 1999. For example, at the February 2003 hearing, plaintiff testified that she took prescribed medications on a daily basis over the past years, which indicates that she was receiving ongoing medical care. (See AR at 75, 79-80). Additionally, plaintiff submitted a Recent Medical Treatment form, noting that she was treated by the following doctors: (1) William McCord from October 1999 to February 2000; (2) Gary Haven from May 1999 to April 2000; (3) Cairns Niguel from May 2000 to October 2000; and (4) Richard Puls from November 2000 to the present. (AR at 314). Though plaintiff submitted a few notes from Dr. Puls that date from 2002, (see AR at 29, 320-25), the record contains nothing from the other doctors postdating October 1999.

If plaintiff had been represented by counsel, it is highly likely that counsel, at a minimum, would have procured plaintiff's updated medical records, and thus, addressed the ALJ's observation that the record included "no assessments that postdate October 1999." (AR at 37). Furthermore, there is no indication in the record that the ALJ requested, inquired about, or sought up-to-date medical records, despite the fact that it was apparent plaintiff was still under medical care. By failing to inquire into the existence of any more recent medical reports or evidence, the ALJ failed to fully and fairly develop the record in this case. See Reefer v. Barnhart, 326 F.3d 376, 381 (3d. Cir. 2003)(finding that the ALJ's failure to obtain medical records covering the time period between the Social Security Administration's determination and the ALJ hearing was error); Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995)(finding that the ALJ's

failure to request up-to-date medical records was error).

In sum, because plaintiff was not represented and the ALJ "did not scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts," see Cox, 587 F.2d at 991, remand for further proceedings is necessary for the ALJ to obtain any updated medical records if such records exist.[4]

B. **Remand is Required to Remedy the Defects in the ALJ's Decision**

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy the defects in the ALJ's decision, and where the record should be developed more fully. McAlister, 888 F.2d at 603; Rodriquez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1990). An award of benefits is appropriate where no useful purpose would be served by further administrative proceedings, see Gamble v. Chater, 68 F.3d 319, 322-23 (9th Cir. 1995), where the record has been fully developed, see Schneider v. Commissioner of the Social Security Administration, 223 F.3d 968, 976 (9th Cir. 2000); Ramirez v. Shalala, 8 F.3d 1449, 1455 (9th Cir. 1993), or where remand would unnecessarily delay the receipt of benefits. See Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir.

---

[4] In her Motion for Summary Judgment, plaintiff also argues that the ALJ erred by improperly applying the grids and by failing to develop the record with regard to her obesity and certain other impairments. As explained above, however, the prejudice caused by plaintiff's lack of representation and the ALJ's error in failing to obtain updated medical records constitute sufficient reasons to remand this case. On remand, the ALJ should consider the remaining issues that plaintiff raises in the Motion for Summary Judgment.

1996).

Here, the Court finds that remand of this matter is appropriate. On remand, the ALJ should attempt to obtain plaintiff's medical records after 1999. Thereafter, the ALJ should consider all the relevant evidence in deciding whether plaintiff has the residual functional capacity to perform jobs that exist in the national and local economies.

## RECOMMENDATION

IT THEREFORE IS RECOMMENDED that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) granting plaintiff's Motion for Summary Judgment or Remand; (3) denying the Commissioner's Cross-Motion for Summary Judgment; and (4) reversing the decision of the Commissioner of the Social Security Administration denying benefits and remanding the matter for further administrative action consistent with this Report and Recommendation.

DATED: July 28, 2005

JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE

13